UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| JAMES EVANS CARTER, M.D., ) | |
| ) | |
|     *Plaintiff*, ) | |
| ) | |
| v. ) | Case No. 1:05-cv-304 |
| ) | |
| BLUECROSS BLUESHIELD OF ) | Judge Mattice |
| TENNESSEE, INC., ) | |
| ) | |
|     *Defendant.* ) | |

## MEMORANDUM

Before the Court is Plaintiff's Motion to Remand this action to the Chancery Court of Hamilton County, Tennessee [Court Doc. No. 3]. In his motion, Plaintiff suggests that the dispute underlying this action is a state contract action which is inadequate to invoke a substantial federal question pursuant to 28 U.S.C. § 1331 and therefore this Court is without subject matter jurisdiction. The Defendant responds that because Plaintiff's pleading which initiated this action in state court, a Petition for Temporary Injunction [Court Doc. No. 1], seeks prospective relief from actions which would be taken by the Defendant pursuant to certain provisions of a federal statute, the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320a-7e (hereinafter "HIPAA")[1] and the regulatory

---

[1] The Court notes that there seems to be some confusion on the part of both Plaintiff and Defendant regarding the precise nature of the reports which Plaintiff seeks to avoid by his Petition for Temporary Injunction and the underlying statutory and regulatory bases therefor. In his original Petition and elsewhere in his court papers, Plaintiff incorrectly refers to the National Practitioner Data Bank ("NPDB") as the database to which the Defendant is likely to report its adverse actions against him. While the Defendant correctly refers to the Health Care Integrity Protection Data Bank ("HIPDB") as the database to which it would (or has) reported its adverse action against Dr. Carter, Defendant repeatedly refers in its papers to the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.* ("HCQIA"), as the statutory basis for the HIPDB. In fact, HCQIA is the statutory basis for the NPDB, and the legislation which created the HIPDB was Section 1128E of the Social Security Act, which was added by Section 221(a) of the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320a-7e ("HIPAA"). Because the HIPDB and the relevant provisions of HIPAA were modeled after the NPDB and the relevant provisions of HCQIA, however, the two statutes are to be considered *in pari materia*. Accordingly, and for purposes of the Motion before it,

framework thereunder, a substantial federal question predominates this litigation, and the Court does have subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons stated herein, and pursuant to 28 U.S.C. § 1441(c), Plaintiff's Motion to Remand will be **GRANTED IN PART** and **DENIED IN PART**. This Court will retain issues relating to Plaintiff's Petition for Temporary Injunction which involve Defendant's reporting under HIPAA and, for the reasons stated herein, will **DENY** Plaintiff's Petition and **DISMISS WITH PREJUDICE** Plaintiff's claims related to such issues. All of Plaintiff's other claims and causes of action will be **REMANDED** to the Chancery Court of Hamilton County, Tennessee.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff James E. Carter is a physician who practices in the state of Kentucky. Defendant Blue Cross Blue Shield of Tennessee, Inc. (hereinafter "BCBST") is a Tennessee corporation which, through licensed affiliates, issues benefit agreements covering the provision of health care services. As such, BCBST routinely contracts with physicians to provide covered services to members of BCBST benefit plans. Under the typical terms of such agreements, the contracting physician agrees to provide covered medical services to patients covered under the BCBST plans, and are reimbursed for those services in accordance with the terms of the agreement and the particular BCBST plan under which the patient to whom services are rendered is covered.

---

the Court will construe the statutes and their respective corresponding regulatory frameworks as such, and will consider judicial interpretations of relevant provisions of the HCQIA and NPDB as persuasive with regard to identical or similar provisions of the HIPAA and HIPDB.
-2-

Case 1:05-cv-00304   Document 18   Filed 04/24/06   Page 2 of 10   PageID #: 2

As part of its physician agreements, as a matter of quality control and in order to comply with the provisions of HIPAA, contracting physicians agree to participate in, and abide by, the terms of BCBST's "Quality Improvement and Litigation Review Programs." Among those programs is what is known as BCBST's "Medical Management Program Corrective Action Plan," which establishes a peer review mechanism to investigate and report any apparent non-compliance by physicians with BCBST's standards for delivery of quality health care services. The Corrective Action Plan establishes fairly elaborate procedures governing the conduct of the prescribed investigations and reports and the peer review staffs and boards implementing them, as well as prescribing the means for challenging the findings of such staffs and boards.

As alleged by Dr. Carter in his Petition for Temporary Injunction, he entered into such a physician agreement with BCBST. [Court Doc. No. 1.] At some point in time, Dr. Carter became the subject of a peer review investigation pursuant to the Corrective Action Plan and was, at the time this action was initiated, in the midst of an administrative appeal of the findings and actions taken as a result of that process.

More specifically, on September 2, 2005, BCBST advised Dr. Carter's counsel that, in accordance with the Corrective Action Plan, it would revoke his credentials and on September 6, 2005, advised Dr. Carter that all his provider contracts with BCBST would be terminated effective November 5, 2005. According to BCBST, pursuant to regulations (specifically 45 C.F.R. § 61.5(a)(1)) promulgated pursuant to HIPAA, the giving of such

notice to Dr. Carter triggered its obligation to report its adverse action against Dr. Carter to the Health Care Integrity Protection Data Bank (hereinafter "HIPDB").[2]

The Plaintiff instituted this civil action by filing a "Petition for Temporary Injunction to Prohibit Blue Cross Blue Shield of Tennessee from terminating Dr. Carter's Physician Participation Agreement until his Final Appeal is Exhausted" [Court Doc. No. 1] in the Chancery Court of Hamilton County, Tennessee on or about October 24, 2005. In its first paragraph, the Petition states:

> Petitioner James E. Carter, M.D. ("Dr. Carter") pursuant to Tennessee Rule of Civil Procedure 65.04 respectfully petitions this Honorable Court for the issuance of a temporary injunction staying Blue Cross Blue Shield of Tennessee ("Blue Cross") from terminating Dr. Carter's Physician Provider Agreement or reporting any adverse peer review action against Dr. Carter until the parties have fully exhausted the contractual appeals process.

Paragraph 8 of 10 numbered paragraphs in the Petition, in support of the relief requested, states:

> That, if Blue Cross is allowed to terminate Dr. Carter's contract prior to the binding arbitration hearing and make such agency and National Practitioner Data Bank peer review reports and Dr. Carter were to prevail in Binding Arbitration, such a report to these agencies and the National Practitioner Data Bank would not be able to be expunged. As such, this premature reporting would irreparably harm Dr. Carter's medical reputation and forever impair his ability to ensure the

---

[2] In footnote 1 to its Response to Plaintiff's Motion to Remand [Court Doc. No. 5], BCBST suggests that Dr. Carter's efforts to enjoin it from reporting the adverse action is moot, since it did, in fact, report such action to the HIPDB on November 8, 2005. Dr. Carter, on the other hand, apparently does not concede that such reporting has, in fact, occurred, and denies that his request for injunctive relief is moot. Since the Court does not have independent access to the HIPDB, and because neither party has presented the Court with any evidence on the issue, the Court is unable to determine the factual issue. Nevertheless, on the assumption that the Court would have the authority to order BCBST to take steps to have any prior report expunged or withdrawal, the Court will treat the issue of BCBST's reporting to the HIPDB as a justiciable controversy between the parties.

continuance of his ability to possess hospital privileges, managed care privileges, and medical malpractice insurance coverage.

On the final page of the Dr. Carter's Petition, he states: "This Case Is To Be Heard on Monday, November 7, 2005 at 9:00 a.m." On November 1, 2005, the Defendant filed its Notice of Removal [Court Doc. 1-1] to this Court. Paragraph 7 of Defendant's Notice of Removal states: "[i]f Plaintiff has a cause of action, the only basis for injunctive relief would be predicated upon 42 U.S.C. § 11112, *et seq.*" The first two sentences of paragraph 8 of the Notice of Removal state: "[t]his Court has original jurisdiction in the above-entitled action pursuant to its federal question jurisdiction (28 U.S.C. § 1331). The removal of the action to this Court is proper pursuant to 28 U.S.C. § 1441(b)."

The Plaintiff timely filed his "Motion to Remand this Contract Issue Back to State Court" [Court Doc. No. 3] on November 14, 2005. Paragraph V of said Motion to Remand states "[t]hat [Plaintiff] does not ask this Court to interpret or apply any federal laws; to the contrary, he asks that his state law contractual rights as expressed in the BCBST Provider Participation Agreement be acknowledged and adhered to by BCBST . . . ." Paragraph VI states "[t]hat [Plaintiff] does asks [sic] this Honorable Court to remand this state law contract controversy back to Hamilton County Chancery Court because this contract claim can not fairly be colored as a substantial federal question . . . ."

-5-

## II. DISCUSSION[3]

### A. Jurisdiction

28 U.S.C. § 1441(c) provides:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims of causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In an early case construing the "separate and independent claim or cause of action" language of 28 U.S.C. § 1441(c), the U.S. Supreme Court recognized that the proper focus of the inquiry of whether a cause of action was "separate and independent" was not the underlying facts themselves, but rather the legal rights involved. *See American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 13, 71 S. Ct. 534, 95 L. Ed. 702 (1951) ("A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.")

---

[3] Prior to beginning its analysis of the merits of Plaintiff's instant Motion to Remand, the Court must address the threshold issue of what materials it may consider for purposes of that analysis. The reason this issue arises is that, unlike the typical lawsuit which is commenced by the filing of a complaint, as noted above, this action was commenced in state court by Plaintiff's filing of a Petition for Temporary Injunction. This set of facts collides with the general rule that "[w]hether an action should be remanded to state court must be resolved by the district court with reference to the complaint, the notice of removal, and the state court record at the time the notice of removal was filed." 14C Charles Alan Wright et al., *Federal Practice & Procedure* § 3739, at 468 (3d ed. 1998). This general rule is consistent with the language of the removal statute, 28 U.S.C. § 1446, which provides in subsection (b) that "the notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." Under this rule, the Court's analysis of the record on this Motion to Remand will be confined to the Plaintiff's Petition for Injunctive Relief and Defendant's Notice of Removal.

While the Plaintiff's Petition for Temporary Injunction is captioned as seeking to prohibit BCBST from terminating his Physician Participation Agreement prematurely, the principal injunctive relief sought by Plaintiff is to prohibit BCBST from reporting its adverse action against him to the "National Practitioner Data Bank."[4] Any dispute regarding the proper interpretation of the Physician Participation Agreement and other contractual relationships between Dr. Carter and BCBST are predominately matters of state law. Dr. Carter's request for injunctive relief from the HIPDB reporting requirements imposed on BCBST by HIPAA, on the other hand, presents a discrete federal question which may, and should, be determined by this Court. See *Majeske v. Bay City Bd. of Educ.*, 177 F. Supp. 2d 666 (E.D. Mich. 2001) (pursuant to 28 U.S.C. § 1441(c), a district court should remand only non-removable claims, but should retain jurisdiction over any properly removed claims). Accordingly, and pursuant to 28 U.S.C. § 1441(c), this Court will retain jurisdiction over the Plaintiff's request for injunctive relief as it relates to BCBST's HIPDB reporting requirements under HIPAA and its regulatory framework. All other matters in dispute between the parties will be **REMANDED** to the Chancery Court of Hamilton County, Tennessee.

### B.   Plaintiff's Request for Temporary Injunction as to Defendant's Federal Reporting Requirements

The Court will now proceed to consider Plaintiff's request for injunctive relief as it relates to BCBST's HIPDB reporting requirements under HIPAA.

---

[4] Actually, as explained in footnote 1, *supra*, the Health Care Integrity Protection Data Bank, or HIPDB.

In *Brown v. Medical College of Ohio*, 79 F. Supp. 2d 840 (N.D. Ohio 1999), the U.S. District Court for the Northern District of Ohio had occasion to consider a physician's similar request for an injunction in the context of an action under the Health Care Quality Improvement Act of 1986 (hereinafter "HCQIA"). The Court in *Brown* determined that the Plaintiff's request for injunctive relief to prohibit Defendant from reporting to the National Practitioner Data Bank would be legally cognizable only if it found that a physician is permitted to bring a legal action to enforce the peer review mechanisms provided under the HCQIA. *Id.* at 844. Addressing this question, the Court found:

> Neither the HCQIA nor its accompanying regulations provide a private right of action. The regulations do provide an administrative remedial procedure under which any physician "may dispute the accuracy of information in the Data Bank concerning himself or herself." 45 C.F.R. § 60.14(a). When a physician initiates such a dispute, a "dispute notation" is added to the report, and any hospital requesting information about a reported physician is informed that the report is in dispute. National Practitioner Data Bank, Fact Sheet on the Dispute Process (visited December 28, 1999), <*http://www.npdb-hipdb.org /pdf/0004fs03.pdf*>.
>
> Although the Sixth Circuit has not had cause to address whether the HCQIA impliedly creates a private right of action whereby an aggrieved physician may enforce its provisions, every federal court to have addressed the issue has held that no such cause of action is created. *Wayne v. Genesis Med. Ctr.*, 140 F.3d 1145, 1147-48 (8th Cir. 1998); *Bok v. Mutual Assurance*, 119 F.3d 927, 928-29 (11th Cir. 1997); *Hancock v. Blue Cross-Blue Shield*, 21 F.3d 373, 374-75 (10th Cir. 1994). This Court agrees with the reasoning and rule of those decisions.
>
> . . . .
>
> There is no evidence in either the text or the legislative history of the HCQIA that physicians are a class for whose especial benefit the Act was passed. To the contrary, the HCQIA's text and legislative history indicate that it was passed

-8-

> to benefit *patients* by improving the quality of health care and reducing the number of incompetent physicians, and, in addition, to benefit peer review committees by providing immunity from suit so long as they abide by its procedures. Since the HCQIA was not enacted to benefit physicians, it follows that no implied right of action exists for physicians under the HCQIA.
>
> Furthermore, allowing a private right of action to enforce the peer review procedures outlined in the HCQIA under the circumstances at bar would be inconsistent with the legislative scheme as a whole. The regulations accompanying the HCQIA set out a comprehensive administrative scheme for challenging the accuracy of a report made to the NPDB. Allowing a physician to bypass the administrative procedure simply by choosing to sue the reporting entity could "induce frequent and deliberative flouting of administrative processes, thereby undermining the scheme of decisionmaking that Congress has created" under the HCQIA. *See McGee v. United States*, 402 U.S. 479, 484, 91 S. Ct. 1565, 29 L. Ed. 2d 47 (1971).

*Id.* at 844-45 (footnote omitted).

While the parties have not cited to (and the Court has not found) an analogous case directly on point construing HIPAA, the Court does note that it is generally true that HIPAA also does not provide a private right of action. *See, e.g., Runkle v. Gonzales*, 391 F. Supp. 2d 210, 237 (D.D.C. 2005) ("No federal court has ever found that Congress intended HIPAA to create a private right of action." (internal quotation marks and citation omitted)). Also, like the regulations under HCQIA, the comparable HIPAA regulations provide for a comprehensive administrative mechanism for a health care practitioner to dispute the accuracy of a report of an adverse action entered into the HIPDB. See 45 C.F.R. § 61.15.

The Court finds the reasoning of the *Brown* court persuasive as it relates to any claim stated in Dr. Carter's request for injunctive relief related to BCBST's HIPDB reporting requirements pursuant to HIPAA and its regulatory framework. Accordingly, the Court will

-9-

Case 1:05-cv-00304   Document 18   Filed 04/24/06   Page 9 of 10   PageID #: 9

**DENY** Plaintiff's Petition for Temporary Injunction to the extent it seeks any relief related to Defendant's HIPDB reporting requirements, and it will **DISMISS WITH PREJUDICE** Plaintiff's claims for such relief.

## III.   CONCLUSION

For the reasons stated above, and pursuant to 28 U.S.C. § 1441(c), Plaintiff's Motion to Remand will be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion will be **DENIED** with respect to any claim stated in Plaintiff's Petition for Temporary Injunction related to Defendant's HIPDB reporting requirement pursuant to HIPAA and its regulatory framework. Plaintiff's Petition for Temporary Injunction will be **DENIED** with respect to such claim, and such claim by Plaintiff will be **DISMISSED WITH PREJUDICE**. With respect to all of Plaintiff's other claims and causes of action, Plaintiff's Motion to Remand will be **GRANTED**, and such other claims and causes of action will be **REMANDED** to the Chancery Court of Hamilton County, Tennessee.

A separate order will enter.

*s/ Harry S. Mattice, Jr.*
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE
